IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BERNARD A. WEWER                                                              PLAINTIFF

vs.                                    Civil No. 2:07-cv-2054

MICHAEL J. ASTRUE                                                             DEFENDANT
Commissioner, Social Security Administration

## MEMORANDUM OPINION

Bernard A. Wewer ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act.  The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  (Doc. No. 5).[1]  Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

### 1. Background:

Plaintiff filed his current applications for DIB and SSI on August 23, 2004.[2] (Tr. 78-80, 420-423).  Plaintiff alleged he was disabled due to depression, anxiety, and "possible kidney and heart

---

[1] The docket numbers for this case are referenced by the designation "Doc. No."  The transcript pages for this case are referenced by the designation "Tr."

[2] It appears from the record that Plaintiff also filed applications on February 12, 2001 and October 28, 2003.  (Tr. 67-77, 405-407, 412-414).

problems." (Tr. 125). At the administrative hearing on July 5, 2006, Plaintiff also alleged he was disabled due to arthritis in his neck and back, left arm weakness, carpal tunnel syndrome, fatigue, and balancing problems. (Tr. 465-466, 481-482). Plaintiff alleged an onset date of January 1, 2004. (Tr. 78, 420). His applications were initially denied on January 19, 2005 and were denied again on reconsideration on May 19, 2005. (Tr. 30-33, 424-425).

On June 5, 2005, Plaintiff requested an administrative hearing on his applications. (Tr. 55). Plaintiff claimed that a hearing was required for the following reasons: "My health won't allow me to work. If I can't provide medical records to prove my claim, it's because I have no access to doctors or medical facilities." (Tr. 55). The hearing was held on July 5, 2006 in Fort Smith, Arkansas. (Tr. 436-484). Plaintiff was present and was represented by counsel, David Harp, at this hearing. *See id.* Plaintiff and Vocation Expert ("VE") Sarah Moore testified at this hearing. *See id.* On the date of this hearing, Plaintiff was fifty-eight (58) years old, which is defined as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(e), and had a ninth grade education (with a high school equivalency or a G.E.D.). (Tr. 442-443).

On October 12, 2006, the ALJ entered an unfavorable decision denying Plaintiff's request for DIB and SSI. (Tr. 13-18). In this decision, the ALJ determined Plaintiff met the non-disability requirements for a period of disability and for DIB and was insured for benefits through the date of her decision. (Tr. 17, Finding 1). The ALJ also found that Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since January 1, 2004, the alleged onset of Plaintiff's disability. (Tr. 17, Finding 2). The ALJ found that Plaintiff's foraminal stenosis, depression (major recurrent by

history), a math disorder, dysthymia[3], and obesity were severe impairments, but they did not meet or medically equal one of the listed impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings").  (Tr. 18, Findings 3-4 ).

In this decision, the ALJ also evaluated Plaintiff's subjective complaints and determined his Residual Functional Capacity ("RFC").  (Tr. 18, Findings 5-6).  Plaintiff claimed all of his impairments caused him to be disabled. (Tr. 465-467).  Specifically, he claimed that, as a result of his impairments, he could only stand or walk for twenty minutes at a time.  (Tr. 465).  Plaintiff claimed that he had problems with fatigue, he tired easily, and he had "very little energy." (Tr. 465). Plaintiff claimed that he was only able to lift between five to ten pounds.  (Tr. 466).  Plaintiff claimed that he had problems with his balance and would be "walking along and just lose . . . [his] . . . balance and almost fall for no apparent reason." (Tr. 466).  Plaintiff claimed that due to the arthritis in his neck, he had a problem with grasping and holding.  (Tr. 466).  Plaintiff claimed that due to his depression and anxiety, he found it was "very difficult to concentrate and focus on any given task." (Tr. 467).  Plaintiff also claimed that his depression and anxiety seriously impacted his memory.  (Tr. 467).

The ALJ evaluated these subjective complaints and allegedly disabling symptoms.  (Tr. 15-17).  After reviewing the record and Plaintiff's subjective complaints, the ALJ discounted those complaints based upon the following six findings: (1) Plaintiff's medical records did not substantiate the degree of pain and functional limitation alleged (for example, Plaintiff's treatment records for depression demonstrated that Plaintiff's depression was successfully treated with Paxil); (2) despite

---

[3] "Dysthymia" is defined as "A chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by some of the following symptoms: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness." *PDR Medical Dictionary* 602 (3rd ed. 2006).

Plaintiff's deteriorating condition in 2001 due to depression, Plaintiff lost his job as a result of the ice storm, not as a result of his depression; (3) the results of two consultative reports did not preclude Plaintiff's ability to perform daily activities or to perform simple work without assistance; (4) despite Plaintiff's complaints of severe depression, Plaintiff stopped using his anti-depressant medication as prescribed; and (5) despite Plaintiff's complaints of disability due to physical limitations, there is no evidence that Plaintiff regularly pursued or required medical care for his physical symptoms prior to 2004. *See id.*

After discounting Plaintiff's subjective complaints, the ALJ then reviewed all the medical evidence and the hearing testimony and determined Plaintiff's RFC. (Tr. 18, Finding 6). Specifically, the ALJ determined Plaintiff retained the RFC for a wide range of light work:

> The claimant has the following residual functional capacity: frequently lift/carry 10 pounds, occasionally lift/carry 20 pounds, stand/walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. The claimant would be unable to climb scaffolds, ladders, and ropes or work at unprotected heights. The claimant would be limited to performing simple, routine instructions that require little judgment and jobs that can be learned by rote with few variables. The claimant would be able to engage in superficial contact with the public, contact that is only incidental to the work performed, and would require concrete, direct, specific supervision.

(Tr. 18, Finding 6). *See* 20 C.F.R. § 416.967(b).

The ALJ determined that Plaintiff's limitations did not preclude her ability to perform some of her Past Relevant Work ("PRW"). (Tr. 18, Finding 7). Plaintiff and the VE testified at the administrative hearing regarding Plaintiff's PRW. (Tr. 445-464). Plaintiff and the VE testified that Plaintiff's PRW included work as a Commercial Cleaner (medium, unskilled as performed by Plaintiff), Poultry Eviscerator (light, unskilled), Industrial Cleaner (light, unskilled as performed), Industrial Cleaner (medium, semi-skilled), Catchall Machine Packager (light, unskilled), and Production Assembler (light, unskilled). (Tr. 445-464). The ALJ then questioned the VE regarding

4

Plaintiff's ability to return to his PRW. (Tr. 472-483). The VE testified that a hypothetical individual with Plaintiff's RFC would be able to perform Plaintiff's PRW as a Poultry Eviscerator, Industrial Cleaner (light, unskilled as performed), Production Assembler, and Catchall Machine Packager. *See id.* The ALJ found, based upon this testimony, that Plaintiff retained the ability to perform his PRW as a Poultry Eviscerator and an Industrial Cleaner (light, unskilled as performed). (Tr. 18, Findings 7-8). The ALJ then found that Plaintiff had not been under a "disability" as defined by the Act at any time through the date of the ALJ's decision. (Tr. 18, Finding 9).

On December 12, 2006, Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. (Tr. 9). On May 10, 2007, the Appeals Council declined the review the ALJ's decision, and the ALJ's decision became the final decision of the SSA. (Tr. 5-7). On June 5, 2007, Plaintiff appealed the ALJ's decision to this Court. (Doc. No. 1). The parties consented to the jurisdiction of this Court on June 11, 2007. (Doc. No. 5). This case is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible

to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers

the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings the present appeal claiming the following: (1) the ALJ improperly determined his RFC; (2) the ALJ erroneously determined that Plaintiff could perform other work; and (3) the Medical-Vocational Guidelines ("Grids") directed a conclusion that Plaintiff was disabled, and the ALJ erred by relying upon the testimony of the VE. (Doc. No. 10, Pages 12-20). In response, Defendant argues that the ALJ's RFC determination is supported by substantial evidence in the record, including Plaintiff's medical records, the consultative physicians' reports, and the reports of several state-agency physicians. (Doc. No. 11, Pages 4-16). Defendant also argues that the ALJ did not find that Plaintiff could perform other work at Step Five of the determination, and he argues that Plaintiff's second claim is meritless. (Doc. No. 11, Page 4). Finally, Defendant argues that the Grids did not apply in Plaintiff's case because Plaintiff did not meet his burden at Step Four of establishing that he was unable to perform his PRW. (Doc. No. 11, Pages 2-3). Because this Court finds that the ALJ's RFC determination is not supported by substantial evidence, this Court will only address Plaintiff's first argument.

**A. Parties' Arguments**

Plaintiff claims the ALJ erred in evaluating his RFC. (Doc. No. 10, Pages 13-17). Specifically, Plaintiff claims that his medical records demonstrated that standing and walking for any significant period of time increased his back pain and using his hands and arms for repetitive tasks was very difficult due to his past history of carpal tunnel syndrome. *See id.* Plaintiff claims the ALJ erred by not incorporating these limitations into the ALJ's RFC determination. *See id.* In response

to Plaintiff's arguments, Defendant claims that the medical records do not support Plaintiff's alleged limitations due to his lower back pain and carpal tunnel syndrome.  (Doc. No. 11, Pages 13-18). Specifically, Defendant claims that the consultative physical examinations by Dr. Gordon McGraw, M.D. did not support Plaintiff's alleged limitations.  *See id.* at 7-8.

### B. Standard for Evaluating a Claimant's RFC

Prior to Step Four of the sequential analysis in a disability determination, the ALJ is required to determine a claimant's RFC.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  This RFC determination must be based on medical evidence that addresses the claimant's ability to function in the workplace.  *See Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004).  The ALJ should also consider "'all the evidence in the record' in determining the RFC, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"  *Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004) (quoting *Krogmeier v. Barnhart,* 294 F.3d 1019 (8th Cir. 2002)).  The plaintiff has the burden of producing documents to support his or her claimed RFC.  *See Cox*, 160 F.3d at 1206; 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ, however, bears the primary responsibility for making the RFC determination and for ensuring that there is "some medical evidence" regarding the claimant's "ability to function in the workplace" that supports its RFC determination.  *Lauer v. Apfel,* 245 F.3d 700, 703-04 (8th Cir. 2001).  Furthermore, this Court is required to affirm the ALJ's RFC determination if that determination is supported by substantial evidence on the record as a whole.  *See McKinney v. Apfel,* 228 F.3d 860, 862 (8th Cir. 2000).

### C. Evaluation of Plaintiff's RFC

In the present action, the ALJ determined that Plaintiff retained the RFC to perform a wide

range of light work, including the ability to frequently lift and carry 10 pounds and occasionally lift and carry 20 pounds. (Tr. 18, Finding 6). The ALJ also found that Plaintiff could stand and walk for six hours in an eight-hour workday and could sit for six hours in an eight-hour workday. *See id.* Plaintiff claims that he cannot lift and carry this amount of weight or stand, walk, and sit for those periods of time because he suffers from lower back pain. (Tr. 465-467). Plaintiff also claims she is limited in her ability to perform SGA due to her carpal tunnel syndrome.[4] (Tr. 481-482).

Based upon her opinion dated October 12, 2006, the ALJ apparently based her RFC determination related to these physical limitations ("Physical RFC") upon the following five findings: (1) Plaintiff did not regularly seek treatment for her claimed back pain and other physical limitations prior to 2004; (2) in December of 2001, Plaintiff specifically denied any orthopedic and neurological problems; (3) Plaintiff's medical records indicate that she was treated for mild, acute (rather than chronic) symptoms through 2004; (4) Plaintiff demonstrated no significant and disabling limitations during the consultative physical examinations on February 16, 2004 and November 30, 2004; and (5) there is no evidence that Plaintiff has regularly pursued or required follow-up medical care for back pain or any other physical impairment during the past 18 months. (Tr. 16-17). This Court will address each of these findings the ALJ used to support her RFC determination.

First, the ALJ is correct in finding that Plaintiff did not seek regular treatment for her claimed back pain and other physical limitations prior to 2004. Plaintiff's alleged onset date, however, was not until January 1, 2004. (Tr. 78, 420). Plaintiff has the burden of proving that *after her alleged onset date,* she suffered from a "disability" or "the inability to do any substantial gainful activity by

---

[4] There are no records establishing Plaintiff's injuries due to carpal tunnel syndrome. The only reference to Plaintiff's carpal tunnel syndrome references Plaintiff's surgery for carpal tunnel syndrome in 1986. (Tr. 362). Because there is no evidence establishing any such limitations, this Court will not address this issue.

9

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The fact that she did not seek regular treatment for her physical limitations prior to 2004 actually *supports* her claim that she became disabled in 2004.[5]

Second, the ALJ based her Physical RFC finding upon Plaintiff's statements in December of 2001 where he specifically denied any orthopedic and neurological problems. (Tr. 16). Upon review of this report, it appears that, in fact, Plaintiff did not *report* any orthopedic or neurological or problems, but he did not "specifically deny" such problems. (Tr. 288). Furthermore, as stated above, Plaintiff's alleged onset date was not until January 1, 2004 (Tr. 78, 420), and any information dated three years prior to this alleged onset date has little or no significance to this RFC determination.

Third, the ALJ based her Physical RFC finding upon Plaintiff's medical records, which she claims indicate that Plaintiff was treated for mild, acute (rather than chronic) symptoms through 2004. (Tr. 16). After reviewing the transcript in this case, this Court finds that Plaintiff's treatment records related specifically to her back pain date from April of 2004 through August of 2004.[6] (Tr. 331-361). These records indicate that Plaintiff suffered from "persistent back pain" and that Plaintiff "reports back [pain] when standing or walking for short lengths of time." (Tr. 331-332). These records also indicate that Plaintiff was admitted to the emergency room on five separate occasions (from July 5, 2004 until August 18, 2004) due to lower back pain. (Tr. 337-357). Furthermore, on

---

[5] It is curious that the ALJ *discounts* Plaintiff's complaints of depression because she suffered from depression for years prior to her alleged onset date (Tr. 15) and then, at the same time, the ALJ *discounts* Plaintiff's physical impairments because Plaintiff did not suffer from those impairments until 2004.

[6] However, there are other medical records in the transcript that may be related to Plaintiff's lower back pain. For instance, Plaintiff's medical records dating back to 2001 deal with prostate problems, urinary tract infections, and possible kidney problems. (Tr. 204-219, 259-260, 275).

10

August 26, 2004, Plaintiff underwent an "MRI Lumbar Spine without Contrast" examination. (Tr. 335). Plaintiff was found to suffer from "[d]egenerative facet hypertrophy[7] at L3-4 and L4-5 with mild foraminal stenosis[8] at these levels." (Tr. 335). According to several medical sources, such a back problem is not considered acute but, is instead, considered a chronic or long-term problem. *See* Peter F. Ullrich, Jr., MD, *Cervical Foraminal Stenosis,* Spine-Health, Nov. 2, 2006, http://www.spine-health.com/conditions/spinal-stenosis/cervical-foraminal-stenosis (finding that the pain from cervical foraminal stenosis "develops slowly"); John Nk Hsiang, MD, PhD, *Spinal Stenosis,* Emedicine, Dec. 13, 2007, http://www.emedicine.com/med/topic2889.htm (describing acquired stenosis as a "degenerative condition").

Fourth, the ALJ based her determination upon the fact that Plaintiff demonstrated no significant and disabling limitations during the consultative physical examinations on February 16, 2004 and November 30, 2004. (Tr. 16-17). On February 16, 2004, Plaintiff underwent a "General Physical Examination" by Dr. Gordon McGraw, MD. (Tr. 289-295). Dr. McGraw found that Plaintiff had a full range of flexion, extension, and rotation in his cervical spine and a full range of flexion in his lumbar spine. (Tr. 292). On November 30, 2004, Plaintiff underwent a second "General Physical Examination" by Dr. McGraw. (Tr. 362-368). Once again, Dr. McGraw found that Plaintiff had a full range of flexion, extension, and rotation in his cervical spine and a full range of flexion in his lumbar spine. *See id.*

However, as a consulting examining physician, Dr. McGraw's findings from both of these examinations are not necessarily entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d)(2).

---

[7] "Hypertrophy" is defined as a "[g]eneral increase in bulk of a part or organ, not due to tumor formation." *PDR Medical Dictionary* 929 (3rd ed. 2006).

[8] "Stenosis" is defined as a "stricture of any canal or orifice." *Id.* at 1832.

Additionally, Dr. McGraw's finding that Plaintiff retains a *full* range of motion in her back is entirely inconsistent with other evidence in the record.  For example, the results from Plaintiff's MRI on August 26, 2004 found Plaintiff suffered from a "[d]egenerative facet hypertrophy at L3-4 and L4-5 with mild foraminal stenosis at these levels." (Tr. 335).  This finding indicates that Plaintiff has at least a *limited* range of motion.  *See id.*  Furthermore, Plaintiff's emergency room records from July 5, 2004 until August 18, 2004 indicate that Plaintiff suffers from severe back pain and would certainly not support a finding that Plaintiff retains a *full* range of motion in his back. (Tr. 337-357). Therefore, due to these inconsistencies in the record and the fact that Dr. McGraw was only a one-time examining physician, the findings of Dr. McGraw do not provide substantial evidence to support the ALJ's RFC determination.  *See Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir. 1998) (holding that "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence").

 Fifth, the ALJ based her RFC determination upon the fact that there was no evidence in the record that Plaintiff had regularly pursued or required follow-up medical care for back pain or other physical impairments during the past 18 months. (Tr. 17).  The ALJ appears to be correct in this finding.  However, it is important to note in this case that Plaintiff lives in a rescue shelter and has no apparent source of income or any ability to afford medical treatment. (Tr. 468).  Plaintiff may be unable to afford any follow-up medical treatment.  Furthermore, as noted by Social Security Regulation 96-7p, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without *first considering any explanations that the individual may provide*, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."

12

(emphasis added).  It does not appear that the ALJ made any inquiry into Plaintiff's reasons for not seeking follow-up treatment for 18 months.  Therefore, the ALJ improperly discounted Plaintiff's subjective complaints based upon this finding.

Because this Court finds that Plaintiff's RFC is not supported by substantial evidence, the ALJ's disability determination is also not supported by substantial evidence, and this disability determination should be reversed and remanded to the ALJ for further findings consistent with this Order.  Upon re-evaluation, if the ALJ were to find that, due to his back pain, Plaintiff only retained the RFC to perform sedentary work, the Medical-Vocational Guidelines ("the Grids") would direct a finding of "Disabled" under Rule 201.06 (considering Plaintiff's age, education, and work experience).

**4. Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is not supported by substantial evidence and should not be affirmed.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 2nd day of July, 2008.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE